In Supreme Court
filed in the clerk's office
7 may 1808.

In the matter of David Robison,
detained by the Marshall of Michigan.

This case presents matter of no little importance to the *citizen*, in general; and to the numerous magistrates in the commission of the peace, in particular.

The return to the writ of HABEAS CORPUS applied for and granted on this occasion, exhibits, among other things, that the said David Robinson applied to one of the justices of the peace of this Territory, while *before him*, *in the execution of his office*, the epithets of A LIAR, A KNAVE, AND A FOOL; to answer for which abuse the said Justice, in association with another, among other provisions ruled the said David Robison to enter into recognizance to appear at the ensuing term of the supreme court of this Territory.

The application of such language to a justice of the peace, especially when in the actual discharge of his functions as such, is little calculated to reflect lustre on the character of an orderly citizen.

The jurisprudence both of England and of the United States of America, though by no means blind to wilful and perverse oppression, regards the office of a justice of the peace, on all occasions, with very great respect; and, on some, with no little tenderness. Political authority, however wisely guarded, is at all times liable to be abused. It has sometimes happened that this officer has carried oppression and vexation into the recesses of private life, exhibited in society the character of the *petty tyrant*, himself the greatest invader of that public tranquility he was designed to protect. While instances have not been wanting, both in England and America, where characters of this description have been animadverted on with the greatest severity; the laws of both have at the same time viewed with an eye of indulgence unintentional errors and mistakes in the execution of this arduous office.

However reprehensible the conduct of the present applicant may be, and however dangerous an example of this kind, among the citizens of a republic; yet, if his appearance at the Supreme Court should have been unlawfully exacted, he must necessarily be discharged.

The Supreme Court possesses a power to punish, in a summary way, contempts of its own authority. This power has been generally imparted to courts of record, both in Great Britain and in the United States. Some have even contended that it is a power also necessarily inherent in every legislative body. Perhaps it is in these, or similar cases, a *necessary power;* incidental to the political duty of self-preservation. It has however, and not without the highest propriety, been generally exercised with great delicacy and forbearance. It ought always to be so; and that perhaps for this, in precedence to all other reasons, that it is a *summary power*, and subjects the citizen to punishment in a mode entirely variant from the ordinary course.

A power to punish, in a summary way, contempts committed towards any tribunal or authority, other than itself, is not possessed by the Supreme Court.

It does however by no means follow that all contempts of this nature must necessarily pass with impunity. The law would indeed be defective, if a power to try them should not exist somewhere.

Two cases of celebrity, elucidating in no slight degree the course to be pursued on these occasions, have occurred in English jurisprudence. The first of these is that of Alston and Blagrave; reported by Strange, and by Lord Raymond. The second is that of Kent and Pococke; also the subject of a report by Strange.

In the decision in the first of these cases the doctrine appears to be laid down, with great precision, that abusive words, which in the case of a private person do not present a sufficient basis for an action of slander, yet, if used concerning a justice of the peace, in the execution of his office, although not expressed in his presence, are *actionable;* and subject the offender to *damages*. It is more particularly determined that the epithet of LIAR is one of the terms which come within this description of words.

The second of the cases referred to establishes the following important distinction; *that while, on the one hand, abusive words spoken* OF *a justice of the peace, relative to the execution of his office, expressed out of his presence, afford a legal basis for the* ACTION OF SLANDER; *on the other hand, abusive words, spoken* TO *a justice of the peace, in his presence, while in the execution of his office, constitutes* A MATTER INDICTABLE

The jurisdiction over offences which are capital is vested exclusively in the Supreme Court; and penalties, which are ascertained by law, and do not exceed in amount the sum of twenty dollars, are cognizable by a justice of the peace. In all other matters which may become the subject of indictment, the Supreme Court of the Territory, and the Courts of Districts, possess the same concurrent jurisdiction, which is so generally vested in civil cases.

The force and effect of the particular terms used must necessarily meet a decision in the course of the particular cases as they arise. If this case should present itself to the attention of the Supreme Court; independent of the preliminary investigation of the attorney-general, with the jury of inquest, and of the counsel of the parties, with the jury of trial; I am entitled to the assistance of those two learned brothers, whom the laws of my country have associated with me in the administration of justice.

The jurisdiction of the Supreme and District Courts being here concurrent, the offence charged, if at all cognizable, may become a subject of investigation in either. The magistrates, in the exercise of their appurtenant discretion, have ruled the party to enter into recognizance for appearance at the Supreme Court; and a power does not seem to be possessed to change this course.

*I consider the return to the writ of habeas corpus awarded in this case, as far as the same sets forth that David Robison called* A JUSTICE OF THE PEACE, *while before him,* IN THE EXECUTION OF HIS OFFICE, A LIAR, AND A KNAVE, AND A FOOL, *and that the said justice with an associate, have ruled him to enter into recognizance for appearance at the Supreme Court to answer therefor,* AS

SUFFICIENT; *and I order David Robison to be restored into the custody of* the Marshal of the Territory of Michigan.    A. B. WOODWARD.

District of Erie                    One of the Judges in and over

May 2, 1808                         the territory of Michigan.

[In the handwriting of Augustus B. Woodward]

TERRITORY OF MICHIGAN, TO WIT

THE UNITED STATES *of America to the Marshall of the territory of Michigan.*

You are hereby commanded to bring before Augustus B. Woodward, one of the judges of the Supreme Court of the territory of Michigan, at his Chambers, in the City of Detroit, on Thursday, the eleventh day of august instant the body of James Anderson detained by you in the common goal of the district of Detroit, as it is Said, by whatsoever name he may be called, together with the cause of his detention; to do, Submit to, and receive Whatsoever Shall be considered in this behalf; and have then there this writ. WITNESS Augustus B. Woodward, one of the judges of the Supreme Court of the territory of Michigan, at Detroit, this tenth day of august one thousand eight hundred eight.          PETER AUDRAIN - clk. S. C. T. M.

Detroit, august 10, 1808.

Let a writ of habeas corpus issue in the case of James Anderson.

A. B. WOODWARD.

One of the judges of Michigan.

TERRITORY OF MICHIGAN SS.

In Obedience to the annexed Writ of Habeas Corpus, as commanded, I have the body of James Anderson, now present, before the Honr^ble Augustus B. Woodward Senior Judge of the Supreme Court of the Territory, who is detained in my custody, by virtue of his having been arrested, and delivered over to me, as the Marshal of the Said Territory, for safe keeping, by Oliver Luther the deputy of George Moore, upon a certain bail piece, emanating from the Circuit Court of Erie county, state of Pennsylvania a copy of which is herewith submitted—                    W^M SCOTT    Marshal

Detroit 11 August A D 1808.

[In the handwriting of William McDowell Scott]